AO 241 (Rev. 5/85)

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District OF MASSACHUSETTS IN WORCESTER |
|---|---|

| Name HARVEY A.RINGGOLD | Prisoner No. W-70233 | Case No. |
|---|---|---|

| Place of Confinement |
|---|
| N.C.C.I.GARDNER P.O.BOX 466,500 COLONY RD. GARDNER MASS.01440 |

**05-40129 FDS**

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| HARVEY A.RINGGOLD | V. STEVEN O'BRIEN SUPERINTENDENT OF N.C.C.I.GARDNER |

| The Attorney General of the State of: | THOMAS REILLY,A.G. |
|---|---|

## PETITION

1. Name and location of court which entered the judgment of conviction under attack __BERKSHIRE COUNTY__
   BERKSHIRE SUPERIOR COURT  NO.2001-00050-01-02-03-04-05

2. Date of judgment of conviction __November 27/2001__

3. Length of sentence  On number 1,3 &-5,12 to 15 years M.C.I.Cedar Junction On number 2001-00050-040 sentence to 3 to 5 years concurrent with 1,3 and 5,;number 2, was nolle prosequi

4. Nature of offense involved (all counts) _____
   2001-00050-01 Assaulted,armed,intent to rob,M.G.L.c.265;018;b.1;
   2001-00050-03,Robbery ,armed  M.G.L.c.265;017.1;
   2001-00050-04,Assault,dangerous weapon M.G.L.c.265;15;b
   2001-00050-05,Assault ,armed intent to rob,M.G.L.c.265;018;b.1

5. What was your plea?  (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

   _____

6. If you pleaded not guilty, what kind of trial did you have?  (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐   No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒   No ☐

FILING FEE PAID:
RECEIPT # _____
AMOUNT $ 5 _____
BY DPTY CLK _____
DATE 8/1/03 _____

FDS
U.S.NO.2004-CV-40059

(2)

9.  If you did appeal, answer the following:

(a) Name of court __Massachusetts Appeals Court__   A.C.NO.2003-P-365

(b) Result __Affirmed Conviction  Decision1;28__

(c) Date of result and citation, if known __Decision under 1;28 on April 8/2004.__                ).

(d) Grounds raised ____ABUSED DECRETION OF THE TRIAL JUDGE,__

_____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court __Supreme Judicial Court__     FAR no.14455

(2) Result ___Application for Further Appellate Review denied,__

_____

(3) Date of result and citation, if known __On December 01/2004 FAR DENIED__

(4) Grounds raised ____ABUSED DISCREITION OF THE TRIAL JUDGE__

_____

(f)  If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____NO_____

(2) Result _____

_____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

_____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐      No  ☒

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised ___ _____

____    _____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
   Yes ☐       No ☐.

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
   Yes ☐       No ☑

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
   (1) First petition, etc.         Yes ___         No ☐
   (2) Second petition, etc.        Yes ☐           No ☑

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
      Caution:  In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self–incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.   Ground one: __It was an abuse of discreition and reversible error__ __for the trial judge..to deny__

   Supporting FACTS (state *briefly* without citing cases or law) __Defendant's motion for relief__ __from prejudicial joinder of charges where the evidence revealed__ __that joinder was violative of Mass.R.Crim.P.9,As Construed by the__ __Sullivan case.__

B.   Ground two: __It was reversible error and violative of Defendant's__ right to due process and a fair trial...

   Supporting FACTS (state *briefly* without citing cases or law) __for the trial judge to__ admit,over objection, a witness;s testimony about identifying the defendant by name that inevitably suggested his receipt of prejudicial hearsay as to police familiarity with and knowleged about the defendant

AO 241 (Rev. 5/85)

C.    Ground three: __It was reversible error and violative of the__
__fair trial and due process provisions of the United States and the__
__Massachusetts Declaration of rights for __.

Supporting FACTS (state *briefly* without citing cases or law) __the trial judge to__
__overrule defendant's objection  to the prosecutor's utilizing__

__a portion of her closing argument to unlawfully shift the burden__

__of the proof to the defendant.__

D.    Ground four: _____

Supporting FACTS (state *briefly* without citing cases or law) _____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☐        No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:
    (a)    At preliminary hearing __MASS.PUBLIC COUNSEL RICHARD D.LEBLANIC,__

    __139 NORTH ST.PITTSFIELD MASS.,01201-5101__

    (b)    At arraignment and plea __RICHARD D.LEBLANIC MASS.PUBLIC COUNSEL SERVICE__
    __139 NORTH ST,SUITE 202 PITTSFIELD MASS.01201-5101__

(c) At trial ___RICHARD D.LEBLANIC MASS.PUBLIC COUNSEL SERVICE
139 NORTH ST.SUITE 202 PITTSFIELD MASS.01201-5101

(d) At sentencing ___RICHARD D.LEBLANIC MASS.PUBLIC COUNSEL SERVICE
139 NORTH ST,SUITE 202 PITTSFIELD MASS.01201-5101

(e) On appeal ___WILLIAM R.HILL JR. MASS.PUBLIC COUNSEL SERVICE
44 BROMFIELD STREET,SUITE 310-A,BOSTON MASS.02108

(f) In any post-conviction proceeding _____

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?
Yes ☒    No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐    No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐    No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_Harvey Riggale_
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

___7/27/05___
(date)

_Harvey Riggale_
Signature of Petitioner

(7)

23

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

U.S.DISTRICT COURT                          U.S.CIVIL NO._____
DISTRICT OF MASSACHUSETTS                   WORCESTER DIVISION

# 05-40129

HARVEY A.RINGGOLD
(PETITIONER)

    V.

STEVEN O'BRIEN
(RESPONDENT)

### PETITIONER'S WRIT OF HABEAS CORPUS
### PURSUANT TO 28 U.S.C.A.§2254 AND 2255,PRISONER IN
### STATE CUSTODY:
#### (INTRODUCTION)

The pro-se petitioner Harvey A.Ringgold is a Massachusetts
State Prisoner,currently incarcerated under conviction of Mass.G.Law
indictment of Berkshire County No.BECR2001-00050-(01 code offense
G.L.c.265.08(b)(1)guilty verdict Assault,armed,intent to rob:02 code
offense M.G.L.c.94C§34(1)Nolle prosequi,Controlled substance possess;
(03-code offense G.L.c.265;017.(1)guilty verdict,Robbery,Armed:(04-
code offense M.G.L.c.265:)§5(b)guilty verdict,Assault,dangerous
weapon;and (05-code offense M.G.L.c.265;018(b)(1)guilty verdict,
Assault,Armed,intent to rob; Also the petitioner in the care and
custody of the Massachusetts Department of Correction,at N.C.C.I.
Gardner,500 Colony Rd.Gardner Mass.01440;

The respondent is Steven O'Brien superintendent of N.C,
C.I.Gardner,at 500 Colony Rd.Gardner Mass.01440.The petitioner pro-se
presents his petition under 28.U.S.C.A.2254 and 2255,Based on claims
of the violation of Federal Constitution 5th and 14th Amendment of
the United States Constitution,and his sentence under conviction

Must be vacated or set aside ,28 U.S.C.A.|2255.

PRIOR PROCEEDING INDICTMENT'S WHEN GRAND JURY WAS SITTING:

### STATEMENT OF THE CASE

On March 22/2001,a Berkshire County Grand Jury returned indictments against Mr.Harvey A.Ringgold charging him with armed assaulted with intent to comit robbery(Nos.01-050-1 and 5)(R,1,5,9)[1] possession of a controlled substance(01-050-2)(R.1,6,),armed robbery (no.01-050-3)(R.1,7,[2] and assault with a dangerous weapon(no.01-050-4)(R.1,8).On November 21/2001,after a hearing on defendant's motion for relief from prejudicial joinder(Ford J.presiding),the motion was denied on November 23/2001(R.2).On November 27/2001,the Commonwealth entered a nolle prosequi as to no.01-050-2(R.3,Tr.I/3). Following jury trial,on November 26 and 27,2001(Ford J,presiding), Defendant was found guilty as charged on nos.01-050-1,-3,-4 and -5 (R.3,Tr.II/239-240).On November 30/2001, Mr.Ringgold was sentenced to concurrent terms of twelve to fifteen years,respectively,on nos. 01-050-1,-3,and -5 to be served at M.C.I.Cedar Junction (R.3,Tr. III/15).He was sentenced on nos 01-050-04,to a term of three to five years at M.C.I.Cedar Junction,to run concurrently with no.01 -050-1(R.3,Tr.III/15).

Notice of appeal was filed on December 3/2001(R.3),and the case was entered in appeals court on March 18/2001.

---

[1]The record appendix will be referred to by page as (R. ).The transcripts of November 21/2001 ,hearing on prejudicial joinder will be referred to by page as (PJ. ).The trial transcript will be referred to by volume and page as (Tr. /).

[2]Indictments numbered 1-050-3,-4 and -5,charge offenses in connection with the later of the two alleged robbery incidents.

25

-3-

On April 8/2004 Massachusetts Appeals Court affirmed the conviction, (R.16).   A.C.no.2003-P-0365.[3/] Also Exhibit-A .

On December 1/2004,Application for Appellate Review was denied,(R.17) [4/]  Also Exhibit-B.

### STATEMENT OF FACTS

#### Pretrial Motion

#### Hearing on motion for relief from prejudicial joinder

Prior to trial,dense counsel moved for relief from prejudicial joinder of charges.

#### The Commonwealth's argument

The Commonwealth argued that "they're related in time,in methodology,and desciption. And essentially the first crime is solved when the second crime is discovered"(PJ.3).The discovery of the assailant in the first crime led to his photo and eventually the alleged victim of the first crime was"given a set of books that the defendant's picture was actually inand he was able to make positive photo identification"(PJ. 4).

The police did not have a name until after the second incident   ,when Mr. Izzo   returned  to the robbery...........

---

3/Exhibit-A Massachusetts Appeals Court Decision ,Affirmed Judgement on April 8/2004,no.-3-P-365(R.16-).

4/Exhibit-B,Supreme Judicial Court,Application for Further Appellate review,denied on December 1/2004,no.FAR-14455(R.17-).

-4-

scene four hours after the crime had occurred and
spotted the defendant. He flagged down a police
cruiser, pointed out Mr. Ringgold as the robber, and
advised that he possessed a gun (PJ. 6-7). The officer
and Mr. Izzo observed Mr. Ringgold "remove his gun from
his waistband and throw it into a snowbank" (PJ. 7).

At his 4:00 p.m. roll call, Officer Strout had
been briefed about a 1:00 p.m. robbery, which included
a description of the alleged perpetrator (id.). Mr.
Ringgold purportedly matched the description given by
the first alleged victim, Mr. Richard Coty (id.).
After Mr. Coty had identified his photograph, "Mr.
Ringgold was then placed under arrest [and also]
charged with the first robbery...." (PJ. 7-8). The
arrest for the second incident allowed Mr. Coty to look
at a new photo array and identify his photograph (PJ.
8). Although Mr. Coty saw a gun, it was doubtful that
he could identify it as Mr. Ringgold's gun (PJ. 8-9).
The robberies occurred in Pittsfield at 1:00 p.m. and
6:00 p.m., on Seymour Avenue and on West Street at the
Big Y, respectively (PJ. 10).

<u>The defendant's argument</u>

Defense counsel argued that, pursuant to Mass. R.
Crim. P. 9, these offenses were unrelated (id.). He

pointed out that the distances between the Big Y and where the crimes had occurred was "quite a hike walking...." (PJ. 12). Because the offenses were unrelated under Rule 9, defense counsel urged that they not be joined for trial (PJ. 13).

In the alternative, even if the events could be deemed to be related,

> there is an inherent prejudice that flows against my client by these offenses being joined. And that's because the nature of the offense in each case is different, very different. My client absolutely, completely, totally denies any involvement in the first robbery, period. He's not offering an alibi defense, but he is denying that he had anything to do with incident number one.

> (_Id._)

Defense counsel stressed the differences between the single witness of the first incident and the two witnesses of the second one (_id._). He argued that the two cases were not complicated, and that each could be completed within a day.

> It may well be, and I'm not being fatuous, the jury impanelment may take longer than the actual trials in these two cases, so we are not talking about a situation where we're going to be spending five or six or seven court days trying these cases. And I would suggest that ... if they are tried separately we will be prepared to

-6-

> go forward on one, complete one and
> go forward on the second.  We would
> not be objecting to that.

(PJ. 15)

Defense counsel further argued that both he and the Commonwealth could easily tailor their questions in such a way that one case would not spill over into the other case (PJ. 16-17).  As for the gun, and its probative effect, defense counsel argued that, although the police found the gun in a snowbank, "the jury doesn't have to be told as to why ... he was being arrested at that time" (PJ. 18).

The judge made a cursory holding that "the law is ... pretty well settled that the mere fact that the defendant's chances of acquittal are greater is not by itself a ground to sever" (PJ. 19).  Just prior to trial, the judge denied the motion, and he noted that the defendant's "rights are saved" (Tr. I/15-16).

<u>Trial</u>

<u>The Commonwealth's case</u>

<u>Richard J. Coty, Jr.</u> lived in Lee, Massachusetts, and had worked as a backtender for Sweitzer Modeway International Papermill for twenty-seven years (Tr. I/100).  On March 15, 2001, at about 12:50 p.m., he was taking the groceries from the Big Y supermarket to his

-7-

car (a 1994 Bonneville) in the parking lot (Tr. I/101).
At that moment, a black male asked him if he could
hitch a ride to work, because he could not catch a cab
there. He said, "I'll pay you for it, I'll give you
five bucks or so for gas" (Tr. I/102). The man was
clad in "[a] fairly long black coat with a knit cap"
(id.). Mr. Coty said yes (id.).

The man gave him directions to the Berkshire
Medical Center (BMC). Since Mr. Coty was familiar with
the area, he knew that the directions were incorrect.
When he inquired about why he was being given them, the
man said, "We'll, pick up a friend of mine, go to work
too" (Tr. I/104). Mr. Coty became alarmed, "[s]o I
pulled over and I say, 'You get out here, I'll give you
a ride up to BMC,' which was right up the street...."
(id.). The man reached into his pocket and pulled out
a gun (Tr. I/105). Mr. Coty grabbed the gun barrel and
held onto it (id.) while they struggled for it (Tr.
I/106).

Mr. Coty noted a dime-sized scar on his
assailant's hand (id.). The front passenger door
opened and the man stepped out, still holding the gun.
"I was dragged through my vehicle, out the passenger
door" (Tr. I/109). The man had purportedly asked for
money (id.). "I lost my grip and I landed on the

-8-

ground, and my car started going down Seymour Street, because it was still in gear...." (Tr. I/109).  Mr. Coty told his assailant, "You ain't gettin' shit" (Tr. I/109-110).

At that juncture, the assailant told him that he had better get his car, because it was rolling away (Tr. I/110).  He ran down Danford Street, and Mr. Coty's car ended up in a snow bank (Tr. I/110-111). Mr. Coty jumped in his car, and purportedly spotted his assailant about 200 to 250 yards down Seymour Street (Tr. I/113).  He drove past the man and headed straight for the police station, where he reported the incident (Tr. I/113-114).  He gave a description to the police, but he was unable to identify the assailant in the mug books that he was shown (Tr. I/114-115).  However, at about 11:30 p.m., he was asked to return to the police station and there picked out Mr. Ringgold's photo from a different array (Tr. I/115).

<u>Defense counsel objected to witness' testifying that he picked out photograph of Harvey Ringgold.</u>

Defense counsel objected to Mr. Coty's specifically referring to Harvey Ringgold's name while testifying about his photo identification, since the only way Mr. Coty could have known Mr. Ringgold's name was if he had obtained it from the police, which made

-9-

it hearsay (Tr. I/115-116). The objection was
overruled (Tr. I/116).

<u>Trial</u> (continued)

    <u>John Izzo</u> was employed by the Massachusetts State
Lottery (Tr. I/128). On March 15, 2001, at about 6:00
p.m., he and his fiancee, Wanda Wood, were on Columbus
Avenue, in front of Teti's bar (Tr. I/129). Prior to
entering Teti's, they were approached by a "[b]ig
fellow. Black. Had <u>a tan parka</u> on, with a hat.... He
asked me if I would give him a ride.... He wanted to
go to the Big Y" (Tr. I/129-130) (emphasis added).
Since the Big Y was located "right around the corner
..., I just took him down there" (Tr. I/130). When
they arrived at the Big Y, the man asked them if they
had any money. When Mr. Izzo told him that he had
none, the man pulled out a weapon with what looked like
a gun barrel (<u>id</u>.). Without being asked, Ms. Wood
reached into her pocketbook and gave him about eighty
dollars (Tr. I/130-131).

    At that juncture, Mr. Izzo unlocked the
electrically controlled doors, but the assailant
thought he was being locked in (Tr. I/131). The man's
gun pointed towards Ms. Wood, but he fled when he
discovered that the door had been unlocked (<u>id</u>.).

32

-10-

About four hours later, as he headed towards the police
station, Mr. Izzo was deliberately driving past Teti's
Bar and saw a man who resembled his assailant (Tr.
I/132). He flagged down a police officer, and

> told him the fellow had robbed me
> earlier in the evening.... He got
> out of the car, approached him and
> ... I told him the weapon's over
> there. And he threw the weapon
> into a snow bank or a bush or
> something.

(Tr. I/132-133)

Mr. Ringgold was arrested, and Mr. Izzo was asked to
come down to the police station and make a report (Tr.
I/133).

On cross-examination, Mr. Izzo acknowledged that
he knew that some people went to Teti's Bar to make
their drug connection (Tr. I/135).

Although Mr. Izzo swore that his statement to the
police was truthful and complete, he conceded that his
return to the area was deliberately to seek out his
assailant (Tr. I/154). Mr. Izzo had an operating phone
in his car (id.).

Marc Strout was a six-year veteran police officer
for the City of Pittsfield (Tr. II/22). On March 15,
2001, about 10:30 p.m., a man flagged him down as he
was driving past Teti's. The man said, "That guy with
the black cap has a gun, I seen it" (Tr. II/24). He

-11-

saw "a black male with a black cap ... start walking
down the street.... I observed that he took with his
left hand and removed a handgun out of his waistband
and tossed it into a snow bank" (id.). He pulled
forward with his cruiser and ordered the man towards
the side of the road and to the front of the cruiser
(Tr. II/25). The man was Mr. Ringgold (Tr. II/31).

Officer Strout handcuffed Mr. Ringgold and called
for backup (Tr. II/26). Officer Tom Barber retrieved a
BB gun from the snowbank (Tr. II/27-28). Officer
Strout did not remember whether it was loaded (Tr.
II/28). Mr. Ringgold was placed under arrest and
brought to the Pittsfield police station (Tr. II/30).
At the time of his arrest, Mr. Ringgold "was wearing
the three-quarter length black jacket, black cap...."
(Tr. II/31-32).

On cross-examination, Officer Strout said that Mr.
Ringgold did not attempt to flee (Tr. II/34).

Wanda Wood was Mr. Izzo's fiancee; they had lived
together for about eight years (Tr. II/42). She worked
for Verizon as an operator (Tr. II/42-43). When she
and Mr. Izzo got "out of the car to go into the bar ...
a black male approached us and asked us for a ride, and
John and I thought it would be okay to give him a ride"
to the Big Y on West Street (Tr. II/43-44). Ms. Wood

described the man as "a black male with <u>a black coat</u>
and a black knit cap, kind of a scruffy beard" (Tr.
II/45) (emphasis added).  When they arrived at the Big
Y, they pulled over close to the building to let him
out (<u>id</u>.).  Ms. Wood said that the man then asked Mr.
Izzo

> if he had any money.... John said
> no.... He pulled out a gun and put
> the gun to John's head.... I got
> really nervous and started freaking
> out and I started rummaging through
> my purse so I could give him some
> money.... Because I was afraid he
> was going to hurt John.... I
> pulled ... about eighty bucks out
> of my purse and I gave it to him
> and I said, "Here, take this," and
> he took the money.

(Tr. II/45-46)

When Mr. Izzo pushed a button to unlock the doors,
the man said, "'What are you trying to do, lock me in,'
and then he put the gun at me....  I thought he was
going to kill me" (Tr. II/46).

After Mr. Izzo assured the man that he had
unlocked the doors, "he left and fled" (<u>id</u>.).  When she
and Mr. Izzo went home' "I was a wreck...  He told me
he was going to the police station" (Tr. II/47).

When Ms. Wood went to the Pittsfield police
station to look at a series of photographs (<u>id</u>.), she
identified Mr. Ringgold's photograph (Tr. II/48).

-13-

Michael Maddalena was a detective with the
Pittsfield Police Department (Tr. II/69).  On March 15,
2001, when he was a patrolman, he booked Mr. Ringgold
and noticed a circular scar on his left hand, which he
identified in a photo (Tr. II/70-78).  On cross-
examination, Detective Maddalena said that Teti's was
located in a high crime area where drug-dealing occurs
(Tr. II/81).  People from all walks of life frequent
the area (id.).

The defendant's case

Harvey A. Ringgold was a thirty-six year old
married father of four (Tr. II/105).  He was born and
grew up in Chester, Pennsylvania (id.).  He was a
tenth-grade drop-out, and his learning disabilities
caused him to have to attend an alternative school in
Pittsfield, Massachusetts (Tr. II/106).  Eventually, he
studied and worked for ten years with his father doing
masonry (Tr. II/107).  After that, he was tutored at
home and worked for two and one-half years as a "prep
cook" for Winer College in Chester, Pennsylvania (id.).
This latter job required him to travel to Great
Barrington, Massachusetts, as a cook for a summer camp
(Tr. II/108).  It was there that he met his future wife
and decided to stay in Massachusetts (id.).  His left

-14-

hand had been scarred about one year ago when his wife accidentally burned him with her cigarette lighter (Tr. II/112-113).

On March 15, 2001, at about 6:00 p.m., he was outside of Teti's purchasing fifty dollars worth of crack cocaine (Tr. II/113-114). Mr. Ringgold was approached by a male and female looking for crack cocaine (Tr. II/114). He got in the back seat of their car (Tr. II/116).

Mr. Ringgold sat alone in the back seat, and Mr. Izzo was behind the wheel (id.). The car was driven around the block while the couple indicated that they wanted eighty dollars worth of crack cocaine (Tr. II/117-118). At that juncture, Mr. Ringgold told them that his fifty dollar piece was worth eighty dollars (Tr. II/118). "I was trying to make a profit" (id.). However, the couple asked him for more, and

> at that point she was going to give
> me the money and he ... put the
> freeze on it, he said no, he said,
> "Get more out of him," and ... at
> that point I said I don't have any
> more, and from that point ... he
> told her not [to] give me the money
> ... and asked me did I have any
> more, because he felt that that
> wasn't the money's worth.

(Tr. II/119)

-15-

An argument ensued as they were approaching the
back of Teti's on Circle Avenue, and Mr. Ringgold said,
"Just forget about it, give me my stuff back" (id.).
Mr. Izzo refused, and

> he told [Ms. Wood] no, and then
> that's when I pulled out the gun
> and I told him ..., Just give me
> the stuff back, I don't want the
> money and ... that's when ... I did
> hear the car lock. I told him ...,
> 'Hey, what you all trying to lock
> me in,' and at that point I got out
> the car and I left.

(Tr. II/120)

Mr. Ringgold insisted that the gun was not pointed at
Ms. Wood, and that he never demanded money from Mr.
Izzo (Tr. II/121). The purpose of pointing the gun at
him was to get his crack cocaine back (id.).

When Mr. Ringgold got out of the car, he went into
Teti's to purchase some more crack, because "they kept
the product. They gave me the money. I went and
purchased some more" (id.). He got high with a friend,
and later on in the evening he went back to Teti's,
where he noticed Ms. Wood in the bar (Tr. II/122).
"She was purchasing some more" (Tr. II/123). He said
nothing to her, and he and a friend left Teti's and
walked towards the friend's home (Tr. II/124).
However, "there was a gentleman [i.e., Mr. Izzo] that
was standing outside of his car ..., at that point I

did notice a cruiser coming down, and he pointed his finger at me ... telling the officer that 'that guy got a gun on him'" (id.).

The police officer called Mr. Ringgold over, and told him to stand by the car. The officer retrieved the gun, and came back and said, "This is your gun, you're going away for a long time" (Tr. II/124-125). Mr. Ringgold said that the gun had no BBs in it that night (Tr. II/128).

Mr. Ringgold denied having ever seen or dealt with Mr. Coty before he testified in this case, let alone rob him (Tr. II/129-130).

On cross-examination, Mr. Ringgold testified that the unloaded gun was just used for show (Tr. II/133-134). The eighty dollars from Ms. Wood allowed him to return to Teti's for another fifty dollar rock of cocaine (Tr. II/136-137). He returned to Teti's later with a friend who had agreed to pay half of a fifty dollar cocaine purchase so that they could both get high (Tr. II/137). When his friend saw the police eyeing Mr. Ringgold, he kept on walking (id.).

## Defense counsel objected to the prosecutor's burden-shifting portion of her closing argument.

Defense counsel objected to that portion of the closing argument that effectively shifted the burden of

proof of the defendant (Tr.II/191-192).The objection was overruled
(Tr.II/192.

ARGUMENT

I        MR.HARVEY A.RINGGOLD IS ENTITLED TO DE NOVO REVIEW:

    A.<u>THE STATE COURT'S DECISION DENYING HARVEY</u>
<u>RELIEF ON THE CLAIMS OF THE TRIAL JUDGE</u>
<u>HAS ABUSED HIS DISCRETION WHICH CAUSED</u>
<u>REVERSIBLE ERROR AND DEPRIVED THE DEFENDANT</u>
<u>DUE PROCESS OF A FAIR TRIAL OF THE PROVIS-</u>
<u>IONS OF THE UNITED STATES CONSTITUTION  AND</u>
<u>THE MASSACHUSETTS DECLARATION OF RIGHTS</u> :

In order for the "presumption of correctness"to apply,
a state court decision must;

    (1) be the product of a fair state court

       "adjudication"of the federal legal issue;

    (2) be the product of a full state court

       adjudication in that it addresses not only the

       calims by also the issue of federal law;and

    (3) have resulted in a decision.

The state court decision is not entitled to any
presumption or consideration if the state's adjudication was
destorted by mistake,or completely disregarded Supreme Court
case law.See e.g.,<u>Hameen V.Delaware</u> 2000 WL 631249,at 21-22(3d
Cir.May 17/2000)(state court's decision was not adjudication  on
merits because analysis was distorted by mistaken view that the
Supreme Court had already rejected identical argument.):<u>Hogan V.</u>
<u>GIBSON</u> ,197 F.3d,1297,1302 n.2.1305-6(10the cir 1999)(Oklahoma
state court's analysis of jury instruction claim under <u>Beck V.</u>
<u>Alabama</u>, 447 U.S.625,(1980).constituted such "Gross deviation from,
and disregard for,the court's rule in <u>Beck</u> that it cannot constitute
"adjudiciation of Hogan's <u>Beck</u> claim on the merits."Since the state
court did not decide the claim on its merits,we review the district

court's conclusion of law de novo and factual finding,if any for clear arror.").

As such ,if the state court's decision is not a fair "adjudication"the federal court is free to review state court's legal decisions de novo.Miller V.Johnson 200 F.3d,374,281 n.4 (5th cir 2000).The Supreme Court specifically addressed this issue, and held that the limitation of review in AEDPA cases pursuant to 28 U.S.C.A.sec.2254(d)(1) applies only to issues  that have been "adjudicated on the merits in state court and review is de novo when there has been no clear adjudication on the merits."Id.

In the fifth circuit ,the Miller ,court set out three factors to consider when evaluating whether the state decision is a true "adjudication"on the merits of petitioners claim;(1)review what the state courts have done in similar cases;(2)consider whether the case history suggests that the state court's recognized any ground for not resolving the case on the merit; and (3)consider whether the state court's opinion suggests reliance on procedural grounds rather that adjudication on the merits. The Supreme Court adopted the Miller factors in Jackson v.Johnson by denying a certiorari petition by the government after the federal court concluded,using the Miller factors that the state court decision was not an adjudication entitled to any deference pursuant to 28 U.S.C.A.sec.2254(d)(1). Jackson V.Johnson ,194,F.3d,641,651(5th. cir.1999)cert.denied 120 S.Ct.1437(2000).

Here.because the state court failed to address Harvey federal claims of constitutional violation regarding trial judge's abuse discretion,there was no adjudication on the merits of this

claim as defined by 28 U.S.C.A.sec.2254(d)(1).As such,this court
should review these legal claims de novo.

<u>ARGUMENT</u>

I.

IT WAS AN ABUSE OF DISCRETION AND REVERSIBLE
ERROR FOR THE TRIAL JUDGE TO DENY DEFENDANT'S
MOTION FOR RELIEF FROM PREJUDICIAL JOINDER OF
CHARGES WHERE THE EVIDENCE REVEALED THAT  THE
JOINDER WAS VIOLATIVE OF MASS.RULE CRIMINAL
PROCEDURE 9,AS CONSTRUED BY THE <u>SULLIVAN</u> CASE.

The Commonwealth argued that there was a continuous course
of criminal conduct that occurred five hours apart in locations
close to each other. Both incidents purportedly were characterized
by similar modes of operation where a ride was solicited,a weapon
was brandished,and money was demanded (PJ.2-3).

Late that evening ,when Mr.Ringgold's name became known
Mr.Coty was called back to the police station to look at photos
and he chose Mr.Ringgold's(PJ.4). The prosecutor stressed that ,
after the second crime , the perpetrator had fled the crime scene.

However, about four hours later ,when Mr.Izzo drove back
past Teti's ,he saw Mr.Ringgold, flagged down a police cruiser ,
and told the officer what had purportedly happened. He also
alerted him to the fact that Mr.Ringgold was carrying a pistol,
which he was then seen removing from his waist and throwing into
a bush (PJ 6-7).

6-7).

Defense counsel argued, in part, that

> [t]he Commonwealth is not alleging
> that this is a single scheme or
> that it's the same criminal conduct
> or episode.  They're not alleging
> that.....  These are two separate
> incidents.  One is an attempted
> robbery, allegedly, and one is a
> robbery, allegedly.  And the
> situations are different.  The only
> thing they have in common is ...
> that they happened on the same day,
> one in the afternoon and one in the
> evening, and that they happened
> allegedly in the alleged victims'
> vehicles.  That's about the only
> thing they have in common.  And you
> heard the description given by the
> Commonwealth, otherwise they are
> different

(PJ. 12)

Defense counsel contended that if the two

incidents were tried together

> it would totally prejudice his
> defense on both of these but the
> problem that we're going [to] have
> from the defense point of view if
> these two ... incidents are joined
> for trial is that the jury is going
> to be looking at my client and
> saying, are you nuts, you're
> telling us out of one side of your
> mouth one thing as to one offense
> and another thing as to the other.
> Well, we think you're just a liar
> as to all of them, and that's not
> fair.

(PJ. 14)

43

-21-

The judge denied the motion (Tr. I/15-16).  This was
reversible error.

One of this Court's major articulations of the
rule governing joinder holds:

> It is only "related offenses," as
> set out in [Mass. R. Crim. P.
> 9](a)(1), 378 Mass. 859 (1979), ...
> that may be joined for trial,
> namely, those which are "[first]
> based on the same criminal conduct
> or episode or [second] arise out of
> a course of criminal conduct or
> series of criminal episodes
> connected together or constituting
> parts of a single scheme or plan."
> "Conduct" translates ... as "an act
> or omission to act," and "episode"
> as "an occurrence or connected
> series of occurrences and
> developments which may be viewed as
> distinctive and apart although part
> of a larger or more comprehensive
> series."  The offenses charged
> herein were not based on the same
> conduct or episode thus described,
> rather they were based on distinct
> acts or omissions or
> occurrences....

> The alleged offenses were
> "unrelated" and joinder in such
> cases is not only unauthorized but
> gravely discountenanced. The
> Reporter says...:  "Rule 9 takes
> the position that the goal of
> judicial economy will rarely be
> paramount to affording the
> defendant a trial as free from
> prejudice as possible; therefore,
> joinder of unrelated offenses is
> prohibited except at the instance
> of the defendant or with his
> written consent." ....

Commonwealth v. Jacobs, 52 Mass. App. Ct. 38, 40-41

(2001)(emphases original).  "Thus, joinder requires

first that the offenses are related, and second that

joinder be in the best interests of justice. [Citation

omitted].  The propriety of joinder is a matter for the

trial judge's discretion.  See Commonwealth v. Wilson,

427 Mass. 336, 345 (1998), and cases cited."

Commonwealth v. Sullivan, 436 Mass. 799, 803 (2002).[3]

> Of course we recognize the words of
> the rule are not immaculately
> precise....  The imprecision lets
> in roomfor some residual discretion
> in the interpretation and

---

[3]Massachusetts Rules of Criminal Procedure 9(a)
provides, in pertinent part:

> (1) Related Offenses.  Two or more
> offenses are related offenses if
> they are based on the same criminal
> conduct or episode or arise out of
> a course of criminal conduct or
> series of criminal episodes
> connected together or constituting
> parts of a single scheme or plan.
>
> . . . .
>
> (3) Joinder of Related Offenses for
> Trial.  If a defendant is charged
> with two or more related offenses,
> either party may move for joinder
> of such charges.  The trial judge
> shall join the charges for trial
> unless he determines that joinder
> is not in the best interests of
> justice.

See Commonwealth v. Sullivan, supra, 436 Mass. at 803
n.3.

> application of the rule.  See
> <u>Commonwealth</u> v. <u>Wilson</u>, 427 Mass.
> 336, 345 (1998).  In our view,
> however, no reasonable exercise of
> discretion could hoist the present
> offenses out of the "unrelated" and
> into the "related" category.

<u>Commonwealth</u> v. <u>Jacobs</u>, <u>supra</u>, 52 Mass. App. Ct. at 41.

"[T]he crimes charged were 'independent offenses'

('unrelated' in the sense of the joinder rule),

reasoning: 'where the defendant simply denied the

charges, evidence of the other offenses would not bear

on an essential element of [any one] crime....'"  <u>Id</u>.

at 43.  Absent in this case was the required nexus and

cohesion of repeated incidents.  See <u>Commonwealth</u> v.

<u>Hoppin</u>, 387 Mass. 25, 33-34 (1982).  See also

<u>Commonwealth</u> v. <u>Blow</u>, 362 Mass. 196, 200 (1972) (before

adoption of Rule 9).  The incidents in these cases lack

any "temporal and schematic nexus" with each other.

See <u>Commonwealth</u> v. <u>Gallison</u>, 383 Mass. 659, 673

(1981).

Unlike its Federal counterpart, Mass. R. Crim. P.

9

> does not expressly authorize
> joinder where crimes are of "the
> same or similar character."
> Compare Fed. R. Crim. P. 8 and 13
> (authorizing joinder where offenses
> "[1] <u>are of the same or similar</u>
> <u>character</u> or [2] are based on the
> same act or transaction or [3] on
> two or more acts or transactions

> connected together or constituting
> parts of a common scheme or plan")
> with Mass. R. Crim. P. 9(a)(1)
> (authorizing joinder where offenses
> "[1] are based on the same criminal
> conduct or episode or [2] arise out
> of a course of criminal conduct or
> series of criminal episodes
> connected together or constituting
> parts of a single scheme or plan").
> Thus mere similarity is not
> sufficient by itself to show
> relatedness.  See Commonwealth v.
> Sylvester, 388 Mass. 749, 754-755
> (1983)....

Commonwealth v. Sullivan, supra, 436 Mass. at 805 n.5

(emphasis original).

     The judge agreed that prejudice should be

considered as a factor (PJ. 19).  "Where offenses have

been properly joined under rule 9(a)(1), the burden is

on the defendant to show that he nevertheless has been

prejudiced by the joinder, and that severance should

have been granted under Mass. R. Crim. P. 9(d)."

Commonwealth v. Sullivan, supra, 436 Mass. at 805

(emphasis added).

     Of course, in the instant case, the defendant's

main objection to the judge's ruling goes to the very

issue of whether the charges were "properly joined."

See, e.g., 25 Moore's Federal Practice §614.03(2)(3d

ed. 2000) ("when the offenses are joined pursuant to

the 'same or similar character' portion of [Fed. R.

Crim. P.] 8 prejudice to the defendant is more likely

because proof of one crime may tend to corroborate the
commission of another"); ABA Standards for Criminal
Justice §2.2(a) (1965) ("Whenever two or more offenses
have been joined solely on the ground that they are of
same or similar character, the defendant shall have the
right to severance of the offense").  "The offenses
charged herein were not based on the same conduct or
episode thus described, rather they are based on
distinct acts or omissions or occurrences."
Commonwealth v. Jacobs, supra, 52 Mass. App. Ct. at 40.

   In sum, defense counsel argued that trying these
cases together would be highly prejudicial, and trying
them separately would not hamper judicial economy or
speed, because,

> if you feel that they are related
> offenses, what I am representing to
> you ... is that the defenses that
> we will be putting forth in these
> trials, whether it's one trial or
> two, are very, very different and I
> would suggest ... that the jury
> will have a very hard time
> accepting either one of them if we
> have to give the same jury both.[4]
> And I would suggest that that's
> prejudice and that the otherwise

---

[4]/Defense counsel was alluding to his theory of the case
that, on the one hand, Mr. Ringgold absolutely denied
ever having encountered Mr. Coty, but, on the other
hand, he was admittedly engaged in a drug transaction
with Mr. Izzo and Ms. Wood that went sour when he tried
to charge them eighty dollars for a fifty dollar bag of
crack cocaine.

48

> usual reasons of judicial economy
> and speed, especially in the
> context of this case, where these
> are not long cases, we do not have
> long lists of witnesses that Mr.
> Ringgold's right to not have that
> prejudice should win out.

(PJ. 18-19)

The test is whether evidence of one crime would be admissible in the other case, and vice versa. In _Sullivan_, the evidence connected the separate crimes to each other. Commonwealth v. _Sullivan_, _supra_, 436 Mass. at 804-805. "[E]vidence of a distinct crime unconnected with that for which the defendant is indicted cannot be received." Commonwealth v. _Welcome_, 348 Mass. 68, 70 (1964).

In the case at bar, the two alleged incidents are not related, because they were not based upon the same criminal act or episode, or arose out of criminal conduct or a series of criminal procedures connected together or constituting part of a single scheme or plan. Mass. R. Crim. P. 9(a)(1). "Thus mere similarity is not sufficient by itself to show relatedness." Commonwealth v. _Sullivan_, _supra_, 436 Mass. at 805 n.5. See Commonwealth v. _Sylvester_, 388 Mass. 749, 754-755 (1983). In addition, joinder based upon cross-admissibility of evidence would mean that the evidence at a separate trial with Mr. Coty as

complainant would come in as "bad acts" in the trial
where Mr. Izzo and Ms. Wood are the complainants, and
vice versa.

> But if such cross-admission of bad
> acts could lawfully occur, then ...
> there would be little difference of
> substance between the two separate
> trials, on the one hand, and a
> joint trial, on the other, and so
> joint trial might as well be
> permitted.
>                      . . . .
>
>     ....True, bad acts have been
> admitted with considerable (and
> sometimes perhaps undue) liberality
> in recent years, but cross-
> admission here would go well beyond
> any permitted boundary.  The time
> interval, lack of connectedness,
> and absence of any markedly
> distinctive method of operation
> would speak as strongly against the
> admission of bad acts as they do
> against the allowance of joinder of
> the offenses for trial under the
> rule.  For the criteria that would
> apply in ruling on the admission of
> bad acts at separate trial[s] are
> in general similar to those that
> apply in ruling on the initial
> joinder of offenses....

Commonwealth v. Jacobs, supra, 52 Mass. App. Ct. at 43-
44.

What similarities can be found between an
attempted robbery that commenced at a supermarket
parking lot, in broad daylight, where the perpetrator
solicited a ride from Mr. Coty under the guise of being
unable to catch a taxi to take him to work, and the

-28-

alleged robbery of Mr. Izzo and Ms. Wood commenced in the evening by a ride solicited from them in front of Teti's Bar, a known haven for illegal drug dealing and other criminal activities?  The defendant's theory of the second incident was that it was a drug deal gone sour.  The fact that these incidents occurred about five hours apart is of no consequence, unless the times chosen for the two incidents somehow goes to show modus operandi.  "[T]o admit bad acts in such situations-and similarly in the separate actions here supposed-would be to use them for the prohibited purpose of proving the defendant had a 'propensity' to commit crimes." Id. at 44 (footnote omitted).

> Where offenses have been correctly joined, the burden is on the defendant to show the existence of particular circumstances (whether apparent before trial or manifested during it) that have prejudiced materially his right to a fair trial.  See Commonwealth v. Montanez, 410 Mass. 290, 304 (1991); Commonwealth v. Wilson, 427 Mass. 336, 346-347 (1998); Mass. R. Crim. P. 9(d)(1).  Where, conversely, offenses have been misjoined, the trial result cannot stand unless the error could be deemed harmless....  But for purposes of the present case it does not matter how, exactly, "harm" or "harmless" is defined, or just how the burden is cast: the misjoinder here appears serious enough to demand reversal for separate trials.

Commonwealth v. Jacobs, supra, 52 Mass. App. Ct. at 46-
47 (emphases original) (footnote omitted).

## II.

IT WAS REVERSIBLE ERROR AND VIOLATIVE OF DEFENDANT'S
RIGHT TO DUE PROCESS AND A FAIR TRIAL FOR THE JUDGE TO
ADMIT, OVER OBJECTION, A WITNESS'S TESTIMONY ABOUT
IDENTIFYING THE DEFENDANT BY NAME THAT INEVITABLY
SUGGESTED HIS RECEIPT OF PREJUDICIAL HEARSAY AS TO
POLICE FAMILIARITY WITH AND KNOWLEDGE ABOUT THE
DEFENDANT.

Defense counsel objected to Mr. Coty's speci-
fically testifying that "Harvey Ringgold" was the name
of the person in the police photo array, since, under
the circumstances, the only way that he could have
known which name was associated with the photograph had
to have come from the police. Defense counsel argued:
"I would suggest that that is straight hearsay and that
part is inadmissible" (Tr. I/115-116). Defense counsel
further argued:

> I don't object to him saying, I
> picked out a photograph. And if
> they have the photograph, that it
> was this photograph. And somebody
> else can testify that it's a
> photograph of Mr. Ringgold, if it
> in fact is. But I object to the
> witness saying that I picked out a
> photograph of Harvey Ringgold.

(Tr. I/116)

The objection was overruled (id.). This was reversible
error.

5²

Mr. Coty was, in effect, allowed to testify to
hearsay, without the Commonwealth's having to
articulate which exception, if any, would be applicable
to this situation. See Commonwealth v. Jaime, 433
Mass. 575, 577 (2001); Grant v. Lewis/Boyle, Inc., 408
Mass. 269, 273 (1990). Such specificity as to Mr.
Ringgold's name could only have strongly implied to the
jury that the defendant must have been so well known to
the police that he must have previously done something
so bad, or illegal, or both, that they felt called upon
to reveal his name to Mr. Coty. Ergo, the implication
is that Mr. Ringgold must be a bad person with a
propensity to commit crimes. See, e.g., Commonwealth
v. Evans, 438 Mass. 142, 151 (2002); Commonwealth v.
Yelle, 19 Mass. App. Ct. 465. 472 (1985). This was
highly prejudicial.

In Commonwealth v. Monson, 57 Mass. App. Ct. 867
(2003), an undercover police officer entered a lounge
with ten patrons in it, including the defendant, and he
directly approached Ms. Monson to attempt to purchase
cocaine. Stating that she did not know him, she
refused to accommodate him, and he left. A short time
later, Ms. Monson went out and bought some Chinese
food. However, shortly after she returned with her
food, other officers entered the lounge and approached

only her.  She allowed them to look in her bag, and
nothing was found.  Following a thirty minute search of
the premises, a cache of thirty-five small rocks of
cocaine was found in a magnetic key case secreted under
the counter top of the bar, very near where Ms. Monson
was sitting.  There was closing argument by the
prosecutor that the officer's initial approach to Ms.
Monson in the lounge was no "coincidence" and neither
was the officers' approach to Ms. Monson after she had
returned to the lounge with her food.  Id. at 871.  On
appeal, the defense argued that

> these statements were improper
> because they strongly implied to
> the jury that the police had
> received a tip from an informant or
> other information that the
> defendant was selling cocaine
> before Officer Aguirre had entered
> the lounge to buy such cocaine,
> notwithstanding the judge's prior
> allowance of her motion in limine
> to exclude any reference to any
> such information....

Id. at 871-872.  The Court held:

> We agree with the defendant
> that the prosecutor's statements
> were improper.  The judge had ruled
> no less than four separate times
> that the Commonwealth was barred
> from presenting any evidence that,
> when he entered the lounge and
> attempted to purchase cocaine from
> the defendant, Officer Aguirre was
> acting on a tip from an informant
> or other information the police had
> received.  See Commonwealth v.

5-4

> Rosario, 430 Mass. 505, 509-510
> (1999) (discussing need for strict
> control of any such evidence even
> where necessary to show state of
> police knowledge)....

Id. at 872.  In other words, it was improper for the

prosecutor to have created an impression that the

police were responding to a valid tip from an

informant, and, under the circumstances, the

prosecutor's actions were held to have created a

substantial risk of a miscarriage of justice.  Id. at

872-873.

In the case at bar, the Commonwealth's evidence

against Mr. Ringgold was far from overwhelming.  Since

the second of the two cases presented to the jury was

essentially a contest of credibility, he was prejudiced

by the admission of what amounted to hearsay testimony

implying his bad character, and a new trial is

required.

### III.

IT WAS REVERSIBLE ERROR AND VIOLATIVE OF THE FAIR TRIAL
AND DUE PROCESS PROVISIONS OF THE UNITED STATES
CONSTITUTION AND THE MASSACHUSETTS DECLARATION OF
RIGHTS FOR THE JUDGE TO OVERRULE DEFENDANT'S OBJECTION
TO THE PROSECUTOR'S UTILIZING A PORTION OF HER CLOSING
ARGUMENT TO UNLAWFULLY SHIFT THE BURDEN OF PROOF TO THE
DEFENDANT.

Midway into her closing argument, the prosecutor

informed the jury:



> [Defense counsel] is correct when he tells you that we have the burden of proof and the defendant doesn't have any obligation to put any evidence on, but once he does, once he gets on that stand, under oath, and tells you his side of the story, you are entitled to scrutinize his story, his version of the events, with the same amount of intensity, the same common sense and the same life experience as you did the Commonwealth's case.
>
> I suggest to you that when you do that, the defendant's story is preposterous....

> (Tr. II/184)

Immediately after the prosecutor concluded her closing argument, defense counsel lodged as objection to this portion of it, as follow:

> I want to register an objection to part of the Commonwealth's closing [argument] in which [she] talked about the burden of proof and how the Commonwealth accepted it and they have the burden of proof but then went on to talk about the defendant testifying and I would suggest to you that that part of her closing was burden shifting. It was burden shifting not because she said that now the defendant has to prove something, but because of what she didn't say. It was extremely unclear in that portion of her closing argument that the defendant, even if you didn't believe the defendant, the Commonwealth still has to prove the case beyond a reasonable doubt and that that burden never shifts.

> I'm certainly not saying that there was anything intentional in the way [the prosecutor] phrased that part of her closing, but in the way it came across, certainly to me, it left me very confused....
> And I'm very concerned about how it came across to the jurors....
>
> Everything that she said about how the jurors should scrutinize my client's testimony was perfectly correct.  I have no objection to that.  But I do object to the unfortunate position of her comments about burden of proof and then talking about my client and scrutinizing his testimony on the stand.

(Tr. II/191-192)

Defense counsel correctly argued that the prosecutor's closing argument unlawfully shifted the burden of proof to the defendant.  See Commonwealth v. Caputo, 439 Mass. 153, 166 (2003) (error for the prosecutor, in final argument, implicitly to place burden on defendant to produce evidence); Commonwealth v. Cintron, 438 Mass. 779, 788-789 (2003) (would be improper for the prosecutor, in final argument, to shift burden to defendant by implying that defendant failed to prove something).

In Caputo, the Court held that the prosecutor did err in his closing statement when he argued that the defendant had "'no good explanation' for the second registration plate on his automobile....  That comment

... should not have been made.  It improperly placed a burden on the defendant to produce evidence.  See Commonwealth v. Fowler, [431 Mass. 30 (2000)] at 36-42."  Commonwealth v. Caputo, supra, 439 Mass. at 166.

In Cintron,

> [t]he defendant argues that the prosecutor improperly shifted the burden of proof to the defendant when he argued in closing that the DNA evidence was "so powerful and so reliable that the defendant chose not to even attempt to refute it, and I submit that what you were left with was an overwhelming case of this defendant's guilt."  In other circumstances, the argument might well be improper.  However, in the context of the entire argument, see Commonwealth v. Lamrini, 392 Mass. 427, 432 (1984), and in light of defense counsel's closing argument, we are satisfied that this was an isolated comment on the strength of the Commonwealth's case, and that the prosecutor did not suggest that the defendant had to prove anything. The defendant did not object or request a curative instruction which, "[a]lthough not dispositive of the issue ... is some indication that the tone, manner' and substance of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial."  Commonwealth v. Toro, 395 Mass. 354, 360 (1985)....

Commonwealth v. Cintron, supra, 438 Mass. at 788-789. Here, unlike Cintron, defense counsel did make a timely objection, his closing argument did not provide any

excuse for insinuations the prosecutor's defulcations,and it would seem to be very difficult for this court to conclude that the toxic argument was just"an isolated comment on the strength of the Commonwealth's case,and that the prosecutor did not suggest that the defendant had to prove anything."Commonwealth v.Cintron supra 438 Mass.at 789.

### CONCLUSION

For the reasons set forth in each of argument I,II and III, the conviction must be reversed and a new trial ordered.

JULY 7/27/2005            PRO-SE  *Harvey Ringgold*
                                  RESPECTFULLY SUBMITTED
                                  MR.HARVEY W.RINGGOLD
                                  N.C.C.I.GARDNER
                                  P.O.BOX 466
                                  500 COLONY RD.
                                  GARDNER MASS.01440


### VERIFICATION OF COMPLAINT

I Harvey A.Ringgold certify that the above said is true and further signed under the pains and penalties of perjury on this 27 day of July 2005.

PRO-SE  *Harvey Ringgold*
        MR.HARVEY A.RINGGOLD
        N.C.C.I.GARDNER
        P.O.BOX 466
        500 COLONY RD.
        GARDNER MASS.01440

05-40129   # 15

# CIVIL COVER SHEET

44
IV 12/96)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I) PLAINTIFFS** PRO-SE HARVEY A.RINGGOLD
N.C.C.I.GARDNER P.O.BOX466
500 COLONY RD.GARDNER MA.01440

**DEFENDANTS** STEVEN O'BRIEN,SUPERINTENDENT
N.C.C.I.GARDNER P.O.BOX 466
500 COLONY RD.,GARDNER MA 01440

**II) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** WORCESTER
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT WORCESTER
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
PRO-SE HARVEY A.RINGGOLD
N.C.C.I.GARDNER,P.O.BOX 466
500 COLONY RD.,GARDNER MASS.01440

ATTORNEYS (IF KNOWN)

UNKNOWN

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☑ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☒ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ Land Condemnation | ☐ 441 Voting | ☒ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C.A.2254 and 2255 WRIT OF HABEAS CORPUS OF STATE PRISONER,
BASED ON UNCONSTITUTIONAL TRIAL,BASED ON TRIAL JUDGE ABUSE DISCREITION
VIOLATION 14 AMENDMENT OF THE U.S.CONSTITUTION

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

JUDGE _____  DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD
*Harvey Ringgold*    7/27/05

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# 05-40129

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)  HARVEY A.RINGGOLD
    PETITIONER  V.STEVEN O'BRIEN SUPERINTENDENT RESPONDENT

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LIST
    ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1))

    ___   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT

    ___   II.   195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720,730,
                740, 790, 791, 820, 830, 840, 850, 890, 892-894, 895, 950.

    ___   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    _✓_   IV.   220, 422, 423, 430, 460, (510) 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___   V.    150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E))

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN
    FILED IN THIS COURT?  ___NO___

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS
    AFFECTING THE PUBLIC INTEREST?  ___NO___
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY? (SEE 28 USC 2403)

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES
    PURSUANT TO TITLE 28 USC 2284?  ___NO___

7.  DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF
    MASSACHUSETTS (WORCESTER COUNTY)? (SEE LOCAL RULE 40.1(C)) YES _✓_ OR IN THE WESTERN
    SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? (SEE LOCAL RULE 40.1(D))
    YES _____

8.  DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN
    SECTIONS OF THE DISTRICT? YES ____yes____
    (a)  IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? Central Section

9.  IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? _____

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY
    GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE
    IN THE CENTRAL SECTION _✓_ OR WESTERN SECTION  Central  Section

(PLEASE TYPE OR PRINT)   HARVEY A.RINGGOLD
ATTORNEY'S NAME_____

ADDRESS  N.C.C.I.GARDNER P.O.BOX 446,500 COLONY RD. GARDNER MA.01440

TELEPHONE NO. none

(COVER.SHT-08/90)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.